# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **In RE:** | ) | |
| | ) | |
| **PETER DADDOSIO,** | ) | **Chapter 7** |
| | ) | |
| **Debtor.** | ) | |
| _____ | ) | **Case No. 20-16830** |
| | ) | |
| **STRATEGIC FUNDING SOURCE,** | ) | |
| **INC.,** | ) | **Judge Schmetterer** |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **Adv. Case No.** |
| | ) | |
| **PETER DADDOSIO,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBT

Strategic Funding Source, Inc., d/b/a Kapitus ("Strategic" or "Plaintiff"), by and through its counsel, submits its **COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBT** against Peter Daddosio ("Debtor" or "Defendant"). In support, Strategic states as follows:

### Jurisdiction and Venue

1. Strategic initiates this adversary proceeding pursuant to 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(2)(B), 11 U.S.C. § 523(a)(4) and 11 U.S.C. § 523(a)(6) and Rule 4007, Federal Rules of Bankruptcy Procedure.

2. The Debtor is a Debtor in Chapter 7 Case No. 20-16830 in this Court (the "Bankruptcy Case") and Strategic is one of his creditors.[1]

---

[1] Notwithstanding any of the allegations and claims herein, the institution of this Adversary Proceeding, the filing of this complaint and any other appearance in this Adversary Proceeding and in the Bankruptcy Case, including the submission of motions, opposition papers, and entry of orders, is without waiver, and express reservation, of any and all of Strategic's rights, defense and remedies available at law and in equity, including, without limitation, under the Agreement (as defined below), Uniform Commercial Code, any other applicable federal or state law and/or commercial code, and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. Strategic expressly incorporates any

3. This is a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(I).

4. Venue in this court is proper pursuant to 28 U.S.C. § 1409.

**Parties**

5. Plaintiff, Strategic Funding Source, Inc. is a New York corporation with offices located at 120 West 45th Street, New York, New York 10036 and 2500 Wilson Boulevard, Suite 350 Arlington, Virginia.

6. Upon information and belief, Debtor is an individual residing at 4121 Judd Avenue, Schiller Park, Illinois 60176.

7. Debtor is and was the sole owner and President of Concrete Guys, Inc., ("Concrete Guys" or "Merchant"), an Illinois corporation that was voluntarily dissolved in 2020, and is the sole owner of CGI Construction LLC ("CGI"), an Illinois limited liability company formed in April 2020.

8. Strategic is a secured creditor of Debtor under a February 2019 Virginia judgment against Debtor, subsequent Illinois registration of that judgment, and a citation to discover assets served in March 2020. Debtor owed Strategic at least $76,029.00 in judgment debt, $7,698.26 in accrued judgment interest, and $33,686 under a guarantee obligation executed by Debtor for attorney's fees, filing fees, and costs incurred in collection and enforcement efforts, minus the value of a piece of equipment recovered by Strategic and the value of an assigned claim in a separate bankruptcy estate. Should Strategic recover in a sale of the equipment or the separate bankruptcy proceedings, that amount will be offset against Strategic's claim here.

---

reservation of rights that it intends to include, or has included, in any proof of claim filed, or to be filed, in the Bankruptcy Case.

**Background**

9. As detailed below, in December 2017, Debtor fraudulently induced Strategic into purchasing future accounts receivable from Debtor's business, Concrete Guys, and later improperly diverted the purchased receivables away from Strategic and for his own benefit.

*Debtor's Misrepresentations to Strategic to Induce the Purchase of Receivables*

10. On or about November 28, 2017, Debtor, as owner of Concrete Guys, completed an application for funding ("Application"). A true and accurate copy of the Application upon which Strategic relied is attached hereto as Exhibit A.

11. In the Application, Debtor represented that Concrete Guys had average monthly sales of $71,448 and that he was seeking funding for "working capital." (Ex. A.)

12. The Application further provided that Debtor acknowledged and agreed that "all information provided . . . is accurate and complete" and that any information change would be immediately disclosed. (Ex. A).

13. Debtor provided business and financial records in support of his Application.

14. After receiving the Application, Strategic provided Debtor a Revenue Based Factoring Agreement, Security Agreement, and Guaranty (together the "Agreement"), which outlined the purchase terms and included several representations that Debtor and Merchant were required to make. A true and accurate copy of the Agreement as executed by Debtor is attached as Exhibit B.

15. Strategic requires, as a threshold step in its consideration of whether to purchase a potential merchant's future receivables, that each merchant sign the agreement and provide certain written representations about its financial situation, operational plans, and intentions. Because Strategic's funding process is truncated from that of a standard financing institution as is typical

3

for the alternative financing industry, Strategic relies heavily upon a merchant's representations and warranties made in each agreement and confirmed in a recorded call. In fact, Strategic's counter signature to the agreement and funding are the last steps in the process.

16. In the Agreement signed by Debtor on December 14, 2017, Debtor agreed to sell $100,533.00 (the "Receipts Purchased Amount") of Merchant's future business receipts in exchange for a payment from Strategic of $71,300.00 (the "Purchase Price"). (Ex. B at 1).

17. Under the Agreement, Strategic purchased all of Merchant Concrete Guys' "future receipts, accounts, contract rights and other obligations arising from or relating to the payment of monies from [Merchant]'s customers and/or other third party payors…" whether paid by cash, check, electronic transfer, or other form of monetary payment in the ordinary course of business (collectively, the "Receipts") until the time that the Merchant paid the Receipts Purchased Amount in full. Agreement, p. 1.

18. Once Strategic funded the Purchase Price, it became the owner of Merchant's Receipts up to the Receipts Purchased Amount of $100,533.00.

19. Under the terms of the Agreement, signed by Debtor on behalf of Concrete Guys and individually as Guarantor, Debtor agreed to and represented that he would collect and deposit all Receipts into a designated bank account (the "Account") and provide irrevocable authorization to Strategic to make ACH debits on a weekly basis from the Account, representing a percentage of the Receipts, until the Receipts Purchase Amount was remitted. (Ex. B at p. 3, Sec. 1.1).

20. Debtor further represented, warranted and covenanted in the Agreement that:

> Each of the above-signed Merchant and Owner(s) represents…the information provided herein and in all of SFS documents, forms, and recorded interviews is true, accurate and complete in all respects.

\* \* \*

Merchant represents, warrants, and covenants that as of this date and during the term of this Agreement:

2.1 <u>Financial Condition and Financial Information</u>. Its bank and financial statements, copies of which have been furnished to SFS, …fairly represent the financial condition of Merchant at such dates, and since those dates there has been no material adverse changes, financial or otherwise, in such condition, operation or ownership of Merchant. Merchant has a continuing, affirmative obligation to advise SFS of any material adverse change in its financial condition, operation or ownership.

\* \* \*

2.3 <u>Authorization</u>. Merchant and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

\* \* \*

2.6 <u>Change of Name or Location.</u> Merchant will not conduct Merchant's businesses under any name other than as disclosed to the Processor and SFS or change any of its places of business.

\* \* \*

2.9 <u>No Bankruptcy or Insolvency</u>. As of the date of this Agreement, Merchant represents that it is not insolvent and does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against Merchant. Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it.

\* \* \*

2.11 <u>Unencumbered Receipts</u>. Merchant has good, complete and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transaction contemplated with, or adverse to the interests of SFS.

2.12 <u>Business Purpose.</u> Merchant is a valid business in good standing under the laws of jurisdictions in which it is organized

and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

(Ex. B 1, 3-4).

21.     The Agreement further emphasized that "**ANY MISREPRESENTATION MADE BY MERCHANT OR OWNER IN CONNECTION WITH THIS AGREEMENT MAY CONSITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL MISREPRESENTATION TO OBTAIN FINANCING.**"  (Ex. B at 2.)

22.     The Agreement provides for attorney's fees and costs in Strategic's enforcement of its rights under the Agreement. (Ex. B. at 4).

23.     The Debtor personally guaranteed Merchant's full performance under the Agreement, including performance of all representations, warranties, and covenants.  (Ex. B. at 6-7).

24.     After submitting his application, business and financial information, and written agreements and representations, Strategic and the Debtor engaged in a recorded telephone call on December 15, 2017, prior to the funding of the Purchase Price (the "Funding Call").

25.     One relevant portion of the Funding Call is transcribed below:

Plaintiff Representative: "Do you anticipate closing your business for any reason over the next twelve months, including vacations, renovations, seasonality, or slowed business periods?"

Debtor: "No."

Plaintiff Representative: "Do you anticipate selling your business in the next twelve months?"

Debtor: "No."

Plaintiff Representative: "Have you been planning to file or do you know of any reason to believe that your business will need to file for bankruptcy protection in the future?"

Debtor: "No."

6

Document    Page 7 of 19

26. Later in the Funding Call, the following exchange occurred:

Plaintiff Representative: "And do you recognize that any false statements or misrepresentation may constitute Fraud and subject you to legal action?"

Debtor: "Yes."

27. Upon information and belief, Debtor's representations in the Application, Agreement, and Funding Call set forth herein were false, and Debtor knew they were false at the time he made them.

28. In reliance on the materials submitted and the representations made by Debtor in the Agreement, the Application, and the Funding Call, Strategic agreed to purchase certain of Concrete Guys' receivables and paid the Purchase Price of $71,300.00.

*** Debtor Diverts and Does Not Remit the Receivables Owned by Strategic ***

29. Less than three months after receiving Strategic's payment, Debtor contacted Strategic due to what he referred to as a slowdown in work that would only last a few weeks.

30. On March 9, 2018, Debtor submitted a Merchant Modification Application that requested a reduced debit for eight weeks, advising that "we have had difficulty keeping up with operating expenses."

31. Strategic agreed to modify the ACH debit amounts from the Account in response to what Debtor had presented as a temporary situation.

32. Debtor did not sufficiently fund the Account for even the modified debit amoutns, resulting in insufficient funds in the Account for the ACH debit attempted on April 23, 2018.

33. When a Plaintiff representative called Debtor on April 23, 2018, he advised that by that point Merchant had "no money."

7

34. By the next week, and with no notice to Strategic, Debtor closed the Account from which Strategic was to debit its purchased receivables. He did not answer or respond to multiple calls and ignored correspondence requesting that he fill out a bank change form and provide updated information of the new account where he was collecting the Receipts.

35. The last ACH debit that Strategic was able to make from the designated account occurred on April 16, 2018, putting Merchant in breach of the Agreement a week later.

36. Upon information and belief, Debtor was causing Merchant to enter into transactions in December 2017 that made it insolvent, and by March 9, 2018, at the latest, Merchant was insolvent.

37. As reported in the bankruptcy schedules of Concrete Guys in bankruptcy case no. 19-30071 before this Court, Merchant had $11,888 of receivables less than 90 days old in December 2019.  Upon information and belief, Concrete Guys also collected Receipts throughout all months of 2018. Despite collecting Receipts from the time of the parties' Agreement and Strategic's funding of the Purchase Price onward, Merchant failed to remit or hold in trust any of the Receipts owned by Strategic.

38. Strategic filed suit against Debtor and Merchant on July 5, 2018, and judgment was entered against Debtor and Merchant in Virginia state court on February 20, 2019.

39. Debtor filed for Chapter 7 bankruptcy on March 15, 2019, but the case was dismissed shortly after on April 24, 2019, when Debtor failed to file required documents.

40. Merchant then filed for Chapter 7 bankruptcy on July 2, 2019, but the case was dismissed shortly after on August 13, 2019, for failure to file required documents.

41. Merchant subsequently filed for Chapter 11 bankruptcy on October 22, 2019, proceedings that were converted to a Chapter 7 proceeding on April 3, 2020 and closed on August

8, 2020. The reason the case was converted was because Merchant did not file a plan of reorganization and its counsel told this Court that Merchant was not operating due to the pandemic.

42. In fact, the Merchant was operating under a different name. On April 11, 2020, a week after Merchant's bankruptcy proceedings converted to a Chapter 7 proceeding, an entity named "CGI Construction LLC" was created and filed for organization with the Illinois Secretary of State's office that was operating in the exact same line of business as Concrete Guys. The registered agent and sole manager identified is "Pete D'addosio," and the address listed for this individual is Debtor's home address.

43. In his Schedule A/B in the Bankruptcy Case underlying this Adversary Proceeding, Debtor provides that he is 100% owner of CGI and that CGI is his employer. In his Statement of Financial Affairs, he identifies CGI as having formed the same month that Concrete Guys stopped operating.

44. In early March 2020, Strategic registered its judgment against Debtor in the Circuit Court of Cook County for the State of Illinois and served Debtor with a citation to discover assets. Within two weeks, that supplementary proceeding was continued with no new hearing dates set due to the Covid-19 pandemic. The first week of September 2020, the Circuit Court requested a status report and for the parties to propose new hearing dates. After Strategic reached out to Debtor to provide the Court with new dates, he filed on September 9, 2020, the Bankruptcy Case underlying this Adversary Proceeding in an effort to wrongfully avoid collection upon Strategic's judgment. Pursuant to the automatic stay in the Bankruptcy Case, the supplementary proceeding has been placed on the Bankruptcy Calendar of the Circuit Court of Cook County.

**Count I – False Pretenses, False Representation, Actual Fraud – 11 U.S.C. § 523(a)(2)(A)**

45. Strategic restates and realleges Paragraphs 1 through 44 of the Complaint.

9

46.     Under 11 U.S.C. § 523(a)(2)(A), the court will hold that a debt is not dischargeable when it is obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's…financial condition."

47.     Upon information and belief, the Debtor entered into and caused Merchant to enter into the Agreement with the specific intent not to pay the Receipts Purchased Amount to Strategic, and the Debtor made false statements to Plaintiff with the intent to induce Plaintiff to purchase the Receipts.

48.     Within three (3) months after Strategic paid the Receipts Purchase Amount to Debtor, the Debtor did not have sufficient funds for Strategic to debit the agreed to weekly amount.

49.     Within four (4) months of Strategic's funding, Debtor had closed the Account and failed to provide Strategic any alternative account from which to debit the Receipts owned by Strategic.

50.     In the Application, Agreement, and Funding Call, upon information and belief, Debtor made false statements to Strategic about his business operations and intentions to maintain the Account as agreed.

51.     Upon information and belief, these false statements include, but are not limited to, that Debtor and Merchant would only utilize one account to collect the Receipts; that it irrevocably authorized Strategic to debit the amounts due under the Agreement from such account; that it would ensure that sufficient funds remained in such account from which the Receipts would be paid; and that it would not change the Account without authorization from Strategic. Despite these statements, within a short time after Strategic provided the funding under the Agreement, Debtor and Merchant closed the designated account.

52. Upon information and belief, Debtor also falsely stated that he did not see any material change in his ability to operate business going forward, that he would not close his business, that he would not change the name of his business, and that he did not plan to file bankruptcy in the future. Instead, within three months, he advised Merchant did not have enough business to pay the Receipts due, and when Strategic obtain judgment and initiated supplementary proceedings, he created CGI.

53. Upon information and belief, Debtor made the above statements with an intent to deceive Strategic into purchasing receivables. Strategic reasonably relied upon these statements when considering whether to purchase Merchant's receivables.

54. Strategic suffered damages as a direct and proximate consequence of the materially false statements made by the Debtor.

55. As a result of these materially false statements by the Debtor, Debtor and Concrete Guys obtained the Purchase Price funding, which would not have been authorized by Strategic if the materially false statements had not been made.

56. There is an actual controversy between Strategic and the Debtor, which is within the jurisdiction of the United States Bankruptcy Court, and the Court may declare the rights and other legal relations of the parties to this action and enter relief based on its power to issue declaratory judgment.

57. As a result, Strategic is entitled to a Judgment Order from this Court declaring that, pursuant to 11 U.S.C. 523(a)(2)(A), Debtor's debt to Strategic is the amounts identified above in Paragraph 8, plus additional costs, fees, expenses, and interest as applicable, is non-dischargeable, and a judgment for money damages pursuant to the request herein.

**Count II – False Statement in Writing – 11 U.S.C. § 523(a)(2)(B)**

58. Strategic restates and realleges Paragraphs 1 through 57 of the Complaint.

59. Under 11 U.S.C. § 523(a)(2)(B), the Court will hold that a debt is not discharged when it is obtained by the "use of a statement in writing – i) that is materially false; ii) respecting the debtor's or an insider's financial condition, iii) on which the creditor … reasonably relied; and iv) that the debtor cause to be made or published with intent to deceive…."

60. In the Application and the Agreement, upon information and belief, Debtor made representations that were materially false regarding Concrete Guys' financial condition.

61. Upon information and belief, these representations include: that Concrete Guys was in good financial standing, that it had average monthly revenue of over $70,000, and that its submitted financial information accurately reflected its current financial position with no changes, when in fact it was unable to pay its expenses at that time; that Debtor would ensure that sufficient funds remained in the Account for the remittance due to Strategic, when in fact shortly after Strategic provided the funding under the Agreement the Debtor claimed that Merchant could not pay expenses and within four months the Debtor and Merchant had hidden away from Strategic any Receipts coming in to the business; and that Debtor and Merchant entered into the Agreement for business purposes, when upon information and belief, Debtor did not use the funds provided by Strategic solely for business purposes.

62. Strategic reasonably relied upon Debtor's written financial representations in determining whether to purchase the future receivables.

63. Upon information and belief, Debtor made these written representations with an intent to deceive Strategic.

64. Strategic suffered damages as a direct and proximate consequence of the materially false statements made by the Debtor.

65. As a result of these materially false statements by the Debtor, Debtor and Merchant received from Strategic the Purchase Price funding, which would not have been authorized by Strategic if the materially false statements had not been made.

66. There is an actual controversy between Strategic and the Debtor, which is within the jurisdiction of the United States Bankruptcy Court, and the Court may declare the rights and other legal relations of the parties to this action and enter relief based on its power to issue declaratory judgment.

67. As a result, Strategic is entitled to a Judgment Order from this Court declaring that, pursuant to 11 U.S.C. § 523(a)(2)(B), Debtor's debt to Strategic is at least in the amounts identified above in Paragraph 8, plus additional costs, fees, expenses, and interest as applicable, is non-dischargeable, and a judgment for money damages pursuant to the request herein.

**Count III – Fraud, Defalcation, Embezzlement, and Larceny – 11 U.S.C. § 523(a)(4)**

68. Strategic repeats and realleges the above allegations set forth in Paragraph 1 through 67 and incorporates the same herein as though more fully stated at length.

69. Debtor's liability to Strategic as alleged herein, is a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" within the meaning of 11 U.S.C. § 523(a)(4).

70. Upon information and belief, Debtor's conduct meets all four grounds for non-dischargeability under Section (a)(4): he committed fraud while serving in a fiduciary relationship to Strategic; he committed a defalcation while serving in a fiduciary relationship to Strategic; he embezzled funds; and he committed larceny.

71. Debtor was in a fiduciary relationship to Strategic for two separate reason. First, he had a fiduciary duty to Strategic when he began holding Strategic's purchased receivables in trust for Strategic. The Agreement is governed by Virginia law, and under Virginia law an express trust is found when there is the intention that the money be kept or used as a separate fund for the benefit of the payor or a third person. Here, the parties entered into an express trust with regards to the purchased Receipts when they executed the Agreement and Debtor began collecting Receipts. Debtor was to hold the Receipts in the Account for Plaintiff's benefit. He did not do so.

72. Second and alternatively, the Merchant is an Illinois corporation, and as an officer of Merchant, Debtor had fiduciary duties to creditors when Merchant became insolvent or is in the zone of insolvency, including to hold in trust corporate assets for the benefit of creditors. By Debtor's own admission, Merchant was unable to pay its expenses by March 2018. Upon information and belief, and contrary to Debtor's representations to Strategic at the time, Merchant was already insolvent or in the zone of insolvency at the time it sought funding from and signed the receivables purchase agreement with Strategic.

73. When a company becomes insolvent, the owners, officers, directors stand in a trust relation towards creditors, and as trustees of corporate properties for the benefit of creditors. Hence, the owners, officers, directors of an insolvent corporation are placed in a fiduciary relation to its creditors.

74. Because Merchant was insolvent at the time it received funds from the Plaintiff or became insolvent shortly thereafter, as Merchant's owner and President Debtor owed fiduciary duties to manage the Merchant's assets in trust for its creditors, including Strategic. Debtor did not do so – beginning in April 2018 (and likely sooner given Debtor and Merchant's request to lower

14

the payment amount under the purchase agreement), he specifically shut Strategic out from benefitting from or receiving any of the receivables or other assets of Merchant.

75. Upon information and belief, the Debtor entered into the Agreement with the specific intent to transfer or hide the loan funds and collateral and prevent Kapitus from collecting the obligations owed to it.

76. Upon information and belief, the Debtor obtained the funding and took the funding by committing fraud and defalcation while acting in a fiduciary capacity as the sole owner, officer and director of Merchant.

77. Upon information and belief, the Debtor used the funds received and the receivables without explanation, reason or purpose relating to Merchant's business, and failed to use the funds for business purposes as represented in the Application and purchase agreement.

78. Debtor's failure to manage Merchant's assets is a breach of fiduciary duty.

79. Upon information and belief, Debtor used his power as owner, officer or director of Merchant for the purpose of obtaining a preference or advantage to himself.

80. Upon information and belief, all of the acts and omissions that constitute a breach or default of the Agreement were performed or omitted by, Debtor and/or at the direction of, or with the consent of, the Debtor and thus the Debtor is in breach of the Agreement giving Strategic a right to recover damages.

81. Debtor represented that it would collect and deposit all of Merchant's business receipts into the Account and provided irrevocable authorization to Strategic to make its ACH debits of its percentage of receivables out of the Account. Nevertheless, Debtor failed to fund and then closed the Account, despite continuing to operate Concrete Guys for another two years and collecting Receipts throughout that time.

82. Debtor committed fraud by taking and allowing himself, personally and through CGI, to gain an advantage over Strategic. He obtained funding from Strategic with his false suggestions and suppression of the truth, shut Strategic out from accessing and debiting its purchased receivables as they were collected, upon information and belief, hid Strategic's property in a separate, never disclosed account, and upon information and belief, used those receivables for his own and CGI's benefit.

83. Debtor committed defalcation while in a fiduciary relationship to Strategic when he failed to account for the receivables owned by Strategic that Strategic had entrusted to him.

84. Debtor committed embezzlement when he appropriated receivables that Strategic had entrusted to him and failed to hold them in trust or remit them to Strategic as promised.

85. Finally, upon information and belief, Debtor transferred the purchased receivables into accounts accessible only to Debtor, which constitutes larceny.

86. There is an actual controversy between Strategic and the Debtor, which is within the jurisdiction of the United States Bankruptcy Court, and the Court may declare the rights and other legal relations of the parties to this action and enter relief based on its power to issue declaratory judgment.

87. As a result, Strategic is entitled to a Judgment Order from this Court declaring that, pursuant to 11 U.S.C. § 523(a)(2)(B), Debtor's debt to Strategic of at least in the amounts identified above in Paragraph 8, plus additional costs, fees, expenses, and interest as applicable, is non-dischargeable, and a judgment for money damages pursuant to the request herein.

### Count IV – Willful Malicious Conduct – 11 U.S.C. § 523(a)(6)

88. Strategic repeats and realleges the above allegations set forth in Paragraph 1 through 87 and incorporates the same herein as though more fully stated at length.

16

89. Pursuant to Section 532(a)(6) of the Bankruptcy Code, a debt incurred by a debtor who engages in willful malicious conduct which results in damage shall be nondischargeable.

90. Strategic believes and alleges that Debtor entered into the Agreement with the intent to use Strategic's payment for uses other than those represented to Strategic, knowing that the financial and business information that he provided to Strategic did not represent Merchant's true condition and operations, and with the intent to use the purchased receivables for his own benefit rather than remitting them to Strategic as promised.

91. Upon information and belief, Debtor also engaged in the following willful and malicious acts, among others:

   a) On or about November 38, 2017, Debtor willfully and maliciously executed the Application in which he represented that Concrete Guys' average monthly sales were $71,448 and that he would use the requested funds for working capital.

   b) On or about December 14, 2017, Debtor did willfully and maliciously execute the Agreement in which he falsely and fraudulently represented that Merchant's financial condition was accurately reflected in the documents produced to Strategic and he failed to disclose any material changes to Merchant's expected business and financial condition.

   c) On or about December 14, 2017, Debtor did willfully and maliciously execute the Agreement in which he falsely and fraudulently represented that he would not take any action that could have any adverse effect upon Merchant's obligations under the Agreement.

   d) Upon information and belief, on or about December 14, 2017, Debtor did willfully and maliciously execute the Agreement in which he falsely and

17

        fraudulently represented that Debtor and Merchant would only utilize one account for remitting the purchased receivables to Strategic, irrevocably authorized Strategic to debit the amounts due under the Agreement from such account, and would ensure that sufficient funds remained in such account from which the purchase receivables would be paid, when in fact in less than three months he advised Strategic did not have sufficient funds for the agreed to ACH debits, within four months he closed the account without notice or new account information provided, and when Strategic was in supplementary proceedings, CGI received and/or began collection Merchant's Receipts.

    e) Debtor caused Merchant to receive money from Strategic based on Debtor's false and fraudulent statements and acts.

92. Debtor's activities described herein constitute willful and malicious conduct which resulted in damage to Strategic, and Debtor's debt to Strategic and is nondischargeable.

93. There is an actual controversy between Strategic and the Debtor, which is within the jurisdiction of the United States Bankruptcy Court, and the Court may declare the rights and other legal relations of the parties to this action and enter relief based on its power to issue declaratory judgment.

94. As a result, Strategic is entitled to a Judgment Order from this Court declaring that, pursuant to 11 U.S.C. § 523(a)(6), Debtor's debt to Strategic is at least in the amounts identified above in Paragraph 8, plus additional costs, fees, expenses, and interest as applicable, is non-dischargeable, and a judgment for money damages pursuant to the request herein.

WHEREFORE, Plaintiff requests that the Court enter judgment as follows:

A. Judgment declaring the entire debt in the amount identified in paragraph 8, above, owed by Debtor to Strategic is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(2)(B), 11 U.S.C. § 523(a)(4) and 11 U.S.C. § 523(a)(6) in this Bankruptcy Case, in any other chapter under Title 11 to which this case may be converted, and in any future bankruptcy case filed by or against Debtor;

B. For an award of damages comprised of the judgment amount due and interest at the Virginia statutory rate of 6% from the date of the judgment, February 20, 2019, onward;

C. An award of all fees and costs incurred in collection proceedings and enforcement actions against Debtor and Merchant, including all fees and costs in bringing this action; and

D. Such other relief as is just and proper under the circumstances.


Dated:  December 14, 2020

Respectfully submitted:

Strategic Funding Source, Inc.,

By one of its attorneys

/s/ Lydia A. Bueschel

Susan Valentine (IL ARDC No. 6196269
Lydia A. Bueschel (IL ARDC No. 6274638)
Dustin B. Allen (IL ARDC No. 6312451)
Valentine Austriaco & Bueschel, P.C
105 W. Adams Street 35th Floor
Chicago, IL  60603
312-238-9545
svalentine@vablawfirm.com
lbueschel@valawfirm.com
dallen@vablawfirm.com