## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In RE: | ) | |
| | ) | |
| PETER DADDOSIO, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | Case No. 20-16830 |
| | ) | |
| STRATEGIC FUNDING SOURCE, | ) | |
| INC., | ) | Judge Schmetterer |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. Case No.  20 A 00418 |
| | ) | |
| PETER DADDOSIO, | ) | |
| | ) | |
| Defendant. | ) | |

### ANSWER TO AMENDED COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBT

NOW COMES, the Debtor/Defendant, Peter Daddosio ("Debtor" or "Defendant"),  by and through his attorney Peter C. Nabhani, and as for his Answer to the Amended Complaint filed by Strategic Funding Source, Inc., d/b/a Kapitus ("Strategic" or "Plaintiff"), states as follows:

**Jurisdiction and Venue**

1.     Strategic initiates this adversary proceeding pursuant to 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), and 11 U.S.C. § 523(a)(6) and Rule 4007, Federal Rules of Bankruptcy Procedure.

**ANSWER**:     The Defendant admits the allegations in this paragraph.

2.     The Debtor is a Debtor in Chapter 7 Case No. 20-16830 in this Court (the "Bankruptcy Case") and Strategic is one of his creditors.[1]

**ANSWER**:     The Defendant admits the allegations in this paragraph.

---

[1] Notwithstanding any of the allegations and claims herein, the institution of this Adversary Proceeding, the filing of this amended complaint and any other appearance in this Adversary Proceeding and in the Bankruptcy Case, including the submission of motions, opposition papers, and entry of orders, is without waiver, and express reservation, of any and all of Strategic's rights, defense and remedies available at law and in equity, including, without limitation, under the Agreement (as defined below), Uniform Commercial Code, any other applicable federal or state law and/or commercial code, and the Federal Arbitration Act, 9 U.S.C. § 1 et seq. Strategic expressly incorporates any reservation of rights that it intends to include, or has included, in any proof of claim filed, or to be filed, in the Bankruptcy Case.

3.      This is a core proceeding over which this Court has jurisdiction pursuant to 28

U.S.C. § 157(b)(2)(I).

**ANSWER**:      The Defendant admits the allegations in this paragraph.

4.      Venue in this court is proper pursuant to 28 U.S.C. § 1409.

**ANSWER**:      The Defendant admits the allegations in this paragraph.

**Parties**

5.      Plaintiff, Strategic Funding Source, Inc. is a New York corporation with offices
located at 120 West 45th Street, New York, New York 10036 and 2500 Wilson Boulevard, Suite 350
Arlington, Virginia 22201.

**ANSWER**:      The Defendant lacks knowledge to admit or deny the allegations in this paragraph
and therefore denies same.

6.      Debtor is an individual residing at 4121 Judd Avenue, Schiller Park, Illinois 60176.

**ANSWER**:      The Defendant admits the allegations in this paragraph.

7.      Debtor is and was the sole owner and President of Concrete Guys, Inc. ("Concrete
Guys" or "Merchant"), an Illinois corporation that was voluntarily dissolved in 2020, and is the sole
owner of CGI Construction LLC ("CGI"), an Illinois limited liability company formed in April 2020.

**ANSWER**:      The Defendant denies that Concrete Guys was voluntarily dissolved, but admits the
remainder of the allegations in this paragraph.

8.      Strategic is a secured creditor of Debtor under a February 20, 2019, Virginia
judgment against Debtor, subsequent Illinois registration of that judgment, and a citation to
discover assets served in March 2020. Debtor owes Strategic $76,029.00 in judgment debt and
accrued judgment interest from the date of the judgment. In addition, under a guaranty obligation
executed by Debtor, he owes attorneys' fees, filing fees, and costs incurred in Strategic's collection
and enforcement efforts. Strategic has recovered certain equipment from Concrete Guys and
continues to pursue GA Paving, Inc. for accounts receivable owed to Concrete Guys. The amount of
Strategic's claim is reduced by the amount of any recovery, less attorneys' fees and costs of
collection.

**ANSWER**:      The Defendant admits the allegations in this paragraph.

**Background**

9.      As detailed below, on December 14, 2017, Debtor fraudulently induced Strategic
entered into an Agreement to purchase future accounts receivable from Debtor's business, Concrete
Guys. Later, Debtor improperly diverted the purchased receivables away from Strategic and for his
own benefit by creating CGI Construction within weeks of Strategic registering the judgment
against Debtor and initiating collection proceedings.

**ANSWER**:      The Defendant denies the allegations in this paragraph.

**Strategic Purchases Concrete Guys' Future Receivables Under the Agreement**

10.      Strategic requires, as a threshold step in its consideration of whether to purchase a
potential merchant's future receivables, that each merchant sign Strategic's agreement and provide
certain written representations about its financial situation, operational plans, and intentions.
Because Strategic's funding process is truncated from that of a standard financing institution, as is
typical for the alternative financing industry, Strategic relies heavily upon a merchant's
representations and warranties made in each agreement and confirmed in a recorded call. In fact,
Strategic's counter signature to the agreement and funding are the last steps in the process.

**ANSWER**:      The Defendant lacks knowledge as to the Plaintiff's operational plans, intentions,
                 process, and reliances, and therefore denies the allegations in this paragraph.

11.      In the December 14, 2017, Agreement signed by Debtor – on behalf of Concrete Guys
and individually as Guarantor – Debtor agreed to sell $100,533.00 (the "Receipts Purchased
Amount") of Merchant's future business receipts in exchange for a payment from Strategic of
$71,300.00 (the "Purchase Price"). (See Agreement at 1, attached as Ex. A.)

**ANSWER**:      Defendant admits that the agreement speaks for itself.

12.      Under the Agreement, Strategic purchased all of Merchant Concrete Guys' "future
receipts, accounts, contract rights and other obligations arising from or relating to the payment of
monies from [Merchant]'s customers and/or other third party payors…" whether paid by cash,
check, electronic transfer, or other form of monetary payment in the ordinary course of business
(collectively, the "Receipts") until the time that the Merchant paid the Receipts Purchased Amount
in full. Id.

**ANSWER**:      Defendant admits that the agreement speaks for itself.

13.      Once Strategic funded the Purchase Price, it became the owner of Merchant's
Receipts up to the Receipts Purchased Amount of $100,533.00. Id.

**ANSWER**:      Defendant admits that the agreement speaks for itself.

14.     Under the terms of the Agreement, signed by Debtor on behalf of Concrete Guys and individually as Guarantor, Debtor agreed to and represented that he would collect and deposit all Receipts into a designated bank account (the "Account") and provide irrevocable authorization to Strategic to make ACH debits on a weekly basis from the Account, representing a percentage of the Receipts, until the Receipts Purchase Amount was remitted. (Ex. A at 3, Sec. 1.1).

**ANSWER**:        Defendant admits that the agreement speaks for itself.

15.     Debtor further represented, warranted, and covenanted in the Agreement that:

Each of the above-signed Merchant and Owner(s) represents...the information provided herein and in all of [Strategic] documents, forms, and recorded interviews is true, accurate and complete in all respects.

* * *

Merchant represents, warrants, and covenants that as of this date and during the term of this Agreement:

* * *

2.3 Authorization.  Merchant and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

* * *

2.6 Change of Name or Location.  Merchant will not conduct Merchant's businesses under any name other than as disclosed to the Processor and [Strategic] or change any of its places of business.

* * *

2.9 No Bankruptcy or Insolvency. As of the date of this Agreement, Merchant represents that it is not insolvent and does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against Merchant. Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it.

(Ex. A at 4).

* * *

2.12 Business Purpose. Merchant is a valid business in good standing under the laws of jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

**ANSWER**:        Defendant admits that the agreement speaks for itself.

16.        The Agreement further emphasized that "**ANY MISREPRESENTATION MADE BY MERCHANT OR OWNER IN CONNECTION WITH THIS AGREEMENT MAY CONSITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL MISREPRESENTATION TO OBTAIN FINANCING**." (Ex. A at 2.) The Agreement provides for attorney's fees and costs in Strategic's enforcement of its rights under the Agreement. (Ex. A at 4).

**ANSWER**:        Defendant admits that the agreement speaks for itself.

17.        The Debtor personally guaranteed Merchant's full performance under the Agreement, including performance of all representations, warranties, and covenants. (Ex .A at 6-7).

**ANSWER**:        The Defendant admits the allegations in this paragraph.

18.        In addition, Debtor and Merchant agreed that their obligations to Plaintiff were secured by an interest in "all accounts, chattel paper, cash, deposit accounts, documents, equipment, general intangibles, instruments, inventory, or investment property. . . whether now or hereafter owned or acquired by Merchant and wherever located; and all proceeds of such property, as that term is defined in Article 9 of the UCC (collectively, the "Collateral")." (Ex. A at 6 Security Agreement.)

**ANSWER**:        The Defendant admits that the agreement speaks for itself.

19.        After submitting his application, business and financial information, and written agreements and representations, Strategic and the Debtor engaged in a recorded telephone call on December 15, 2017, prior to the funding of the Purchase Price (the "Funding Call").

**ANSWER**:        The Defendant admits the allegations in this paragraph.

20.        One relevant portion of the Funding Call is transcribed below:

Plaintiff Representative: "Do you anticipate closing your business for any reason over the next twelve months, including vacations, renovations, seasonality, or slowed business periods?"

Debtor: "No."

Plaintiff Representative: "Do you anticipate selling your business in the next twelve months?"

Debtor: "No."

Plaintiff Representative: "Have you been planning to file or do you know of any reason to believe that your business will need to file for bankruptcy protection in the future?"

Debtor: "No."

**ANSWER**:       The Defendant admits the allegations in this paragraph.

      21.       Later in the Funding Call, the following exchange occurred:

      Plaintiff Representative: "And do you recognize that any false statements or misrepresentation may constitute Fraud and subject you to legal action?"

      Debtor: "Yes."

**ANSWER**:       The Defendant admits the allegations in this paragraph.

      22.       Upon information and belief, Debtor's representations regarding the continuation of his business as Concrete Guys, Inc. and his representations regarding periods of slowdown or shutdown, made in both the Agreement and Funding Call, were false, and Debtor knew they were false at the time he made them.

**ANSWER**:       The Defendant denies the allegations in this paragraph.

      23.       In reliance on the materials submitted and the representations made by Debtor in the Agreement and the Funding Call, Strategic agreed to purchase certain of Concrete Guys' receivables and paid the Purchase Price of $71,300.00.

**ANSWER**:       The Defendant lacks knowledge as to what the Plaintiff relied upon in its decision to purchase the Defendant's receivables.

**Debtor Does Not Remit, and Diverts for His Own Use, the Receipts Owned by Strategic**

      24.       Less than three months after receiving Strategic's financing, Debtor contacted Strategic due to what he referred to as a slowdown in work that would only last a few weeks.

**ANSWER**:       The Defendant admits the allegations in this paragraph.

      25.       On March 9, 2018, Debtor submitted a Merchant Modification Application that requested a reduced debit for eight weeks, advising that "we have had difficulty keeping up with operating expenses."

**ANSWER**:       The Defendant admits the allegations in this paragraph.

      26.       Strategic agreed to modify the ACH debit amounts from the Account in response to what Debtor had presented as a temporary situation.

**ANSWER**:       The Defendant admits the allegations in this paragraph.

27.     Debtor did not sufficiently fund the Account for even the modified debit amounts, resulting in insufficient funds in the Account for the ACH debit attempted on April 23, 2018.

**ANSWER**:        Defendant admits that there were insufficient funds to pay the ACH debit, but further states that the monies that were in the account were used for operating costs earlier in the month.

28.     When a Plaintiff representative called Debtor on April 23, 2018, he advised that by that point Merchant had "no money."

**ANSWER**:        The Defendant admits the allegations in this paragraph.

29.     In fact, these representations were false. Debtor had opened an additional account (other than the Account designated for the collection of Receipts under the Agreement), where he deposited the Receipts owned by Plaintiff. On information and belief, he also revoked his authorization for Plaintiff's ACH debit in the designated Account, all in violation of the Agreement.

**ANSWER**:        The Defendant denies the allegations in this paragraph.

30.     Thereafter, Debtor failed to answer or respond to multiple calls and ignored correspondence requesting that he fill out a bank change form and provide updated information of the new account where he was collecting the Receipts.

**ANSWER**:        The Defendant denies the allegations in this paragraph, as he was in contact with the Plaintiff about the lack of monies in the account and that any debits should be stopped, because they would be returned for insufficient funds, until he was able to obtain additional work and payments to cover the debits.  The Defendant also believes that the account was not closed, only that he stopped authorization of the ACH debits, because he believed that they would have been rejected for insufficient funds.

31.     The last ACH debit that Strategic was able to make from the designated Account occurred on April 16, 2018, putting Merchant in breach of the Agreement a week later.

**ANSWER**:        The Defendant admits the allegations in this paragraph.

32.     Despite collecting Receipts from April 23, 2018, to the present, Debtor and Merchant have failed to remit or hold in trust any of the Receipts owned by Strategic.

**ANSWER**:        The Defendant denies the allegations in this paragraph.

**Plaintiff's Judgment Against Debtor and His Attempts to "Reorganize"**

33.     Strategic filed suit against Debtor and Merchant on July 5, 2018, and judgment was entered against Debtor and Merchant in Virginia state court on February 20, 2019.

7

**ANSWER**:          The Defendant admits the allegations in this paragraph.

34.    Debtor filed for Chapter 7 bankruptcy on March 15, 2019, but the case was dismissed shortly thereafter on April 24, 2019, when Debtor failed to file required documents.

**ANSWER**:          The Defendant admits the allegations in this paragraph.

35.    Merchant then filed for Chapter 7 bankruptcy on July 2, 2019, but that case was also dismissed shortly thereafter on August 13, 2019, for failure to file required documents.

**ANSWER**:          The Defendant admits the allegations in this paragraph.

36.    Merchant subsequently filed for Chapter 11 bankruptcy on October 22, 2019, proceedings that were converted to a Chapter 7 proceeding on April 3, 2020, and Merchant's bankruptcy was closed on August 8, 2020.  The reason the case was converted was because Merchant did not file a plan of reorganization, and its counsel told the Court that Merchant was not operating due to the pandemic.

**ANSWER**:          Admits that the case was converted due to the inability to file a Chapter 11 Plan, and that the case was later closed, but denies the remainder of the allegations in the paragraph.

Defendant further states that Concrete Guys had stopped operating at the time of filing the Chapter 11 Case, after which the Defendant was operating the Debtor in Possession at a very reduced operations, which made it impossible to propose a feasible Plan of reorganization.

37.    In fact, the Merchant was operating under a different name. On April 11, 2020, a week after Merchant's bankruptcy proceedings converted to a Chapter 7 proceeding, an entity named "CGI Construction LLC" ("CGI") was created and filed for organization with the Illinois Secretary of State's office that was operating in the exact same line of business as Concrete Guys, Inc. The registered agent and sole manager identified is "Pete D'addosio," and the address listed for this individual is Debtor's home address.

**ANSWER**:          The Defendant denies that the Merchant was operating after filing bankruptcy in October 2019. Defendant admits that he began operating CGI Construction LLC after the conversion of the Chapter 11 bankruptcy case, as it was evident that he was unable to propose a Plan of reorganization for Concrete Guys.

38.    On information and belief, in an effort to hinder, delay and defraud Plaintiff, Debtor transferred all of Merchant's Receipts – which, as discussed above, were owned by Plaintiff under the Agreement – and all of Merchant's equipment – which was secured by Plaintiff's security agreement – to CGI.

**ANSWER**:          The Defendant denies the allegations in this paragraph.

39.    Despite his failed attempts to undergo reorganization in bankruptcy court, Debtor testified under oath that he had simply "reorganized" on his own terms. Debtor testified that he stopped performing work as Concrete Guys and started to perform the identical concrete work as CGI.  According to his own sworn testimony, Debtor's attempt to "reorganize" meant that he

continued to pay himself and other creditors, such as Ford Motor Company, while refusing to pay
Plaintiff the very Receipts he had sold to Plaintiff.

**ANSWER**:      The Defendant admits that he reorganized himself, but denies the conclusions
drawn and the characterization of his testimony denies the allegations in this
paragraph.

40.      In his Schedule A/B in the Bankruptcy Case underlying this Adversary Proceeding,
Debtor admits that he is 100 percent owner of CGI and that CGI is his employer. In his Statement of
Financial Affairs, he identifies CGI as having formed the same month that Concrete Guys stopped
operating.

**ANSWER**:      The Defendant admits the allegations in this paragraph.

41.      In early March 2020, Strategic registered its judgment against Debtor in the Circuit
Court of Cook County for the State of Illinois and served Debtor with a citation to discover assets.
Because of COVID-19, for a period of months, no hearings were held in the Circuit Court of Cook
County. Only after Strategic reached out to Debtor, once court dates were thereafter being set, did
Debtor file the Bankruptcy Case underlying this Adversary Proceeding. Pursuant to the automatic
stay in the Bankruptcy Case, the supplementary proceeding has been placed on the Bankruptcy
Calendar of the Circuit Court of Cook County.

**ANSWER**:      The Defendant denies that any of his actions were wrongful, but admits that he filed
for relief under Chapter 7 on September 9, 2020.

### Count I – False Representations, Fraudulent Transfer, and Actual Fraud – 11 U.S.C. § 523(a)(2)(A)

42.      Strategic restates and realleges Paragraphs 1 through 41 of the Complaint.

**ANSWER**:      The Defendant restates and realleges his answers to paragraphs 1-41 above.

43.      Under 11 U.S.C. § 523(a)(2)(A), the court will hold that a debt is not dischargeable
when it is obtained by "false pretenses, a false representation, or actual fraud, other than a
statement respecting the debtor's…financial condition."

**ANSWER**:      The Defendant denies that his debt is not dischargeable.

44.      Upon information and belief, the Debtor entered into, and caused Merchant to enter
into, the Agreement with the specific intent not to pay the Receipts Purchased Amount to Strategic
and made false statements to Strategic with the intent to induce it to purchase the Receipts. After
inducing Strategic to purchase the Receipts, the Debtor revoked authorization for the weekly debits,
diverted Strategic's Receipts to the newly formed CGI entity, and transferred equipment and other
assets to CGI, all in an effort to avoid remitting amounts owed to Strategic.

**ANSWER**:      The Defendant denies the allegations in this paragraph.

45.      Within three months after Strategic paid the Receipts Purchase Amount to Debtor,
the Debtor did not have sufficient funds for Strategic to debit the agreed to weekly amount.

**ANSWER**:    The Defendant denies the allegations in this paragraph, as the agreed upon debit amounts were paid through April 16, 2018.

46.    Within four months of Strategic's funding, Debtor had revoked his authorization on the Account and remitted funds to another account, refusing to provide Strategic any alternative account from which to debit the Receipts owned by Strategic.

**ANSWER**:    The Defendant he stopped authorization of the ACH debits, because he believed that they would have been rejected for insufficient funds, and notified the Plaintiff about the lack of funds in his account to cover debits.

47.    Rather than remit the Receipts that Plaintiff had purchased under the Agreement, Debtor diverted the Concrete Guys' Receipts to an account other than the Account designated under the Agreement.

**ANSWER**:    The Defendant denies the allegations in this paragraph.

48.    Debtor thereafter caused Concrete Guys to involuntarily dissolve and to cease doing business under that name. Instead, Debtor purported to reorganize under the name CGI, performing the identical services as Concrete Guys with the identical ownership, all for the purpose of avoiding his obligations to Plaintiff.

**ANSWER**:    The Defendant denies that he caused Concrete Guys to involuntarily dissolve, or it was for the purpose of avoiding obligations to the Plaintiff.

49.    Debtor's conduct constitutes actual fraud, including but not limited to, the following acts of concealment and hinderance: failing to remit Receipts to the designated Account under the Agreement, revoking the authorization allowing Plaintiff to ACH debit the Account, dissolving Concrete Guys and instead collecting receivables through CGI, transferring equipment and other assets to CGI, and operating his business as CGI, despite his representations he "will not conduct Merchant's businesses under any name other than as disclosed to [Strategic]"  See Ex. A at 4, §2.6.

**ANSWER**:    The Defendant denies the allegations in this paragraph.

50.    In addition, Debtor made false statements to Strategic about his business operations and intentions to maintain the Account as agreed.  Upon information and belief, these false statements include, but are not limited to, that Debtor and Merchant would only utilize one account to collect the Receipts; that it irrevocably authorized Strategic to debit the amounts due under the Agreement from such account; that it would ensure that sufficient funds remained in such account from which the Receipts would be paid; that it would not change the Account without authorization from Strategic; that Debtor and Merchant would not change the name of the company, and that Debtor and Merchant had no plans to shut down the business or file bankruptcy. Despite these statements, Debtor failed to remit the Receipts, revoked the authorization for Plaintiff to ACH debit the Account, diverted the Receipts to another account, shut down Concrete Guys and continued operations as CGI, and caused Concrete Guys to "reorganize" despite failing to do so through appropriate bankruptcy proceedings.

**ANSWER**:    The Defendant denies the allegations in this paragraph.

51.     Upon information and belief, Debtor made the above statements with an intent to deceive Strategic into purchasing receivables. Strategic reasonably relied upon these statements when considering whether to purchase Merchant's receivables.

**ANSWER**:     The Defendant denies the allegations in this paragraph.
+
52.     Upon information and belief, Debtor intended to, and in fact committed, actual fraud.

**ANSWER**:     The Defendant denies the allegations in this paragraph.


53.     Strategic suffered damages as a direct and proximate consequence of this actual fraud.

**ANSWER**:     The Defendant denies the allegations in this paragraph.


54.     There is an actual controversy between Strategic and the Debtor, which is within the jurisdiction of the United States Bankruptcy Court, and the Court may declare the rights and other legal relations of the parties to this action and enter relief based on its power to issue declaratory judgment.

**ANSWER**:     The Defendant denies the allegations in this paragraph.


55.     As a result, Strategic is entitled to a Judgment Order from this Court declaring that, pursuant to 11 U.S.C. § 523(a)(2)(A), Debtor's debt to Strategic is the amounts identified above in Paragraph 8, plus additional costs, fees, expenses, and interest as applicable, is non- dischargeable, and a judgment for money damages pursuant to the request herein.

**ANSWER**:     The Defendant denies the allegations in this paragraph.

### Count II – Embezzlement – 11 U.S.C. § 523(a)(4)

56.     Strategic repeats and realleges the above allegations set forth in Paragraph 1 through 55 and incorporates the same herein as though more fully stated at length.

**ANSWER**:     The Defendant repeats and realleges the above answers to Paragraph 1 through 55 and incorporates the same herein as though more fully stated at length.

57.     Debtor's liability to Strategic as alleged herein, is for embezzlement within the meaning of 11 U.S.C. § 523(a)(4).

**ANSWER**:     The Defendant denies the allegations in this paragraph.

58.     Debtor agreed that he would collect and deposit all of Merchant's business receipts into the Account and provided irrevocable authorization to Strategic to make its ACH debits of its percentage of receivables out of the Account. Nevertheless, Debtor revoked his authorization and

remitted his Receipts to another account, despite continuing to operate Concrete Guys and thereafter CGI, and collecting Receipts throughout the time of his breach to the present.

**ANSWER**:        The Defendant denies the allegations in this paragraph.

59.    Debtor committed embezzlement when he appropriated receivables that Strategic had entrusted to him and failed to hold them in trust or remit them to Strategic as promised.

**ANSWER**:        The Defendant denies the allegations in this paragraph.

60.    There is an actual controversy between Strategic and the Debtor, which is within the jurisdiction of the United States Bankruptcy Court, and the Court may declare the rights and other legal relations of the parties to this action and enter relief based on its power to issue declaratory judgment.

**ANSWER**:        The Defendant denies the allegations in this paragraph.

61.    As a result, Strategic is entitled to a Judgment Order from this Court declaring that, pursuant to 11 U.S.C. § 523(a)(4), Debtor's debt to Strategic in the amounts identified above in Paragraph 8, plus additional costs, fees, expenses, and interest as applicable, is non-dischargeable, and a judgment for money damages pursuant to the request herein.

**ANSWER**:        The Defendant denies the allegations in this paragraph.

### Count III – Willful Malicious Conduct – 11 U.S.C. § 523(a)(6)

62.    Strategic repeats and realleges the above allegations set forth in Paragraph 1 through 61 and incorporates the same herein as though more fully stated at length.

**ANSWER**:        The Defendant repeats and realleges the above answers to Paragraph 1 through 61.

63.    Pursuant to Section 532(a)(6) of the Bankruptcy Code, a debt incurred by a debtor who engages in willful malicious conduct which results in damage shall be nondischargeable.

**ANSWER**:        The Defendant denies that his debt is not dischargeable.

64.    Strategic believes and alleges that Debtor intended to evade his obligations under the Agreement by using an account other than the Account designated under the Agreement, revoking the authorization allowing Plaintiff to ACH debit the Account, converting Strategic's collateral by transferring it to CGI Construction, LLC, dissolving Concrete Guys and instead collecting receivables through CGI Construction LLC.

**ANSWER**:        The Defendant lacks knowledge as to the Plaintiff's beliefs, but denies that his conduct was wrongful.

65.    Debtor also engaged in the following willful and malicious acts, among others:

a)    On or about December 14, 2017, Debtor did willfully and maliciously execute the Agreement in which he falsely and fraudulently represented that he would not take any action that could have any adverse effect upon

> Merchant's obligations under the Agreement, including, but not limited to, agreeing that he would not conduct Merchant's businesses under any other name.

> b) Upon information and belief, on or about December 14, 2017, Debtor did willfully and maliciously execute the Agreement in which he falsely and fraudulently represented that Debtor and Merchant would only utilize one account for remitting the purchased receivables to Strategic, irrevocably authorized Strategic to debit the amounts due under the Agreement from such account, and would ensure that sufficient funds remained in such account from which the purchase receivables would be paid. In fact, in less than three months, he advised Strategic did not have sufficient funds for the agreed to ACH debits; within four months, he closed the account without notice or new account information provided, and when Strategic was in supplementary proceedings, CGI received and/or began collection Merchant's Receipts.

> c) Debtor caused Merchant to receive money from Strategic based on Debtor's false and fraudulent statements and acts.

> d) "Reorganizing" outside of bankruptcy proceedings by performing the exact same concrete services that he had performed as Concrete Guys through CGI, both of which were 100 percent owned by Debtor, to evade his obligations to Plaintiff;

> e) Diverting Concrete Guys' Receipts to CGI Construction LLC, transferring Merchant's equipment and other assets to CGI Construction, LLC; and

> f) Paying himself and other creditors from the Receipts he sold to Plaintiff.

**ANSWER**: The Defendant denies that any of his representations were false, and therefore denies the conclusions in this paragraph.

66. Debtor's activities described herein constitute willful and malicious conduct which resulted in damage to Strategic, and Debtor's debt to Strategic and is nondischargeable.

**ANSWER**: The Defendant denies the allegations in this paragraph.

67. There is an actual controversy between Strategic and the Debtor, which is within the jurisdiction of the United States Bankruptcy Court, and the Court may declare the rights and other legal relations of the parties to this action and enter relief based on its power to issue declaratory judgment.

**ANSWER**: The Defendant denies the allegations in this paragraph.

68. As a result, Strategic is entitled to a Judgment Order from this Court declaring that, pursuant to 11 U.S.C. § 523(a)(6), Debtor's debt to Strategic is at least in the amounts identified above in Paragraph 8, plus additional costs, fees, expenses, and interest as applicable, is non-dischargeable, and a judgment for money damages pursuant to the request herein.

13

**ANSWER**:        The Defendant denies the allegations in this paragraph.

       **WHEREFORE**, Defendant, Peter Daddosio, prays that the Court enter judgment in his favor, and any other relief as is just and proper under the circumstances.


                           /s/*Peter C. Nabhani*

                           _____

                           **Peter C. Nabhani (Atty. No. 6283600)**
                           **Attorney for Debtor**
                           **77 W. Washington Street, #1507**
                           **Chicago, IL 60602**
                           **(312) 219-9149**
                           **Email: pcnabhani@gmail.com**

14